Reese, J.
delivered the opinion of the court.
In 1805, Jesse Thomas, of the commonwealth of Virginia, made his last will and testament and died. The first clause of the will directed that his executrix and executors, or either of them, should sell as they might think fit, the land and plantation whereon the testator then lived, and the proceeds of the same, with a further sum, not exceeding four hundred pounds, should be by his executrix or executors, or either of them, laid out in a tract or tracts of land lying within the State of Tennessee, which said land so purchased should be to the use of his wife, the executrix, during her natural life, and *404 (hat at her death, the land should be equally divided among his sons John Thomas, Anthony Baggart Thomas, and Nathaniel Haggart Thomas, and their heirs forever.
The bill charges that there was personal estate enough to pay all the debts and to raise the sum of four hundred pounds, to be invested in land in Tennessee as directed,' that the executors sold the tract of land’ devised to be sold for a large sum of money; that a part of the proceeds was by them invested in the purchase of land in Tennessee as directed; but that a large portion of the trust fund they omitted to invest and retained in their hands.
The bill also alleges that after the death of the testator, and before the death of the tenant for life, Anthony H. Thomas, one of the devisees in remainder, died intestate; his personal representative is not before the court. The'widow died before the filing of the bill. They claim two-thirds of the un-invested trust fund, and two-sixths of the other third, as the heirs at law of Anthony H. Thomas. The defendant, Phin-eas Thomas, has not answered the bill, and as to him it is taken for confessed.
The defendant Scruggs answers, that at the death of the testator he was residing in Tennessee, and some months af-terwards went on to Virginia and qualified, the other executors having previously qualified, and before his arrival, sold the land mentioned in the will. He insists that so much of the trust fund as he received he expended either in the purchase of Tennessee lands, according to the trust in the will, or in payment of the debts of the estate, and argues that he is not liable beyond the amount he actually received. And whether his liability should be so restricted, constitutes the main question which has been discussed in the cause. It has been strenuously insisted, that as by the terms creating the trust, the concurrent act of the co-trustees was not made necessary to give' validity to the transaction of either a sale or a purchase, they should not be made responsible for each other in either acting amiss or refusing to act. But the answer of Scruggs shows that he accepted this trust; that ho entered upon its discharge by receiving a portion of the trust fund, and by purchasing a portion of the land direclcd to bo *405 Purchased. His answer itself shows that he violated the trust 1 _ by misapplying the proceeds arising from the sale of the land to other purposes; and then the testimony of his co-trustee, Thomas, taken at his instance, establishes that he had equal control with himself over the trust fund arising from the sale of the land, and indeed that he received a larger portion of it than the witness Thomas did. Here then is a case of co-trustees receiving between them a trust fund, executing the trust in part by the purchase of lands, violating the trust by the palpable misapplication of the funds to other objects, and violating it also by omitting to carry into effect a positive injunction of the trust, in not vesting the balance of the fund in the manner directed. Scruggs, by having done so much, and by so far co-operating with Thomas, placed himself in an attitude to make him responsible for doing the whole. Thomas cannot say that, because Scruggs had some of the funds in his hands, and by the terms of the will, had power without his concurrent act to make a valid purchase, that he is not responsible, nor shall Scruggs be heard to say it. Both were guilty of a plain breach of trust, and they will not be permitted to say we have disobeyed the positive directions of the testator, but then we have divided between us the trust fund, and each may be held liable for the separate amount in his hands. No case can be 'found, it is believed, tending at all to sanction such a course.
This is a much stronger case than that of Deaderick vs. Wharton’s Executors,(a) just determined by us. Here both the trustees violated their duty and the trust assumed by them, by acting as they should not have done, and by omitting to act as they should. From the proof, however, this extends 'only in the case of Scruggs, to the fund arising from the sale of the Virginia land. As to the four hundred pounds it does not appear that it came to the hands of Scruggs. The administration had for some time proceeded before he reached Virginia, and he seems only to have had joint action and control with Thomas, as relates to the proceeds of the real es *406 tate, and he professes to be ignorant, and there is no proof that he knew what had been previously received, or what debts had been paid. Thomas, however, against whom the bill is taken for confessed, must be held answerable for the whole trust fund, and Scroggs for the whole proceeds of the sale of the land in Virginia.

 Auto page 263.